Good morning, your honors, and may it please the court, Daniel Bromberg for the plaintiff Raymond Watison. I'd like to reserve two minutes for rebuttal. This is a prisoner civil rights case. You're going to reserve two minutes. Keep an eye on the clock. Okay. Because you're the one who has to keep time. Okay. This is a prisoner civil rights case, your honor, which was originally filed pro se in the district court. And it involves allegations of retaliation of a most serious nature. The most serious allegations. Let me ask you at that point, Mr. Bromberg, retaliation is of a serious nature. The grievance filed by Mr. Watson against Ms. Carter or against Ward Carter, I couldn't find what his grievance was. What was it based on? It seemed to be for unspecified reasons. Your honor, you're referring to the grievance, which is where in the record? Well, I think that might be for you to find. He makes a claim against Rosa Rodriguez on the grounds that Rosa Rodriguez discriminated against him for racial and financial violence. That's the grievance he filed, right? Yes, your honor. He filed a claim against Mary Carter. And I have here for unspecified reasons. Can you tell me what those reasons were since they were so grave? Well, your honor, this is an issue that hasn't been raised in the briefing. Well, my question is this. Should we take into consideration the filings of a grievance for unspecified reasons since the Supreme Court has told us in Iqbal that it is the duty of a pleader to state specific facts which make out a plausible case? And if there are no reasons for a grievance, state it in the complaint. Well, your honor, I'm a little bit unclear. Are you suggesting that Mr. Watteson didn't exhaust his administrative remedies? No. His basis is I filed a grievance against Carter. She retaliated against me by lying to the parole board I didn't get parole. Isn't that right? No, that's not his claim. His claim is that he filed grievances against Rosa Rodriguez and that Ms. Carter retaliated against him for filing that grievance. There were actually two grievances that were filed against Rosa Rodriguez. So Ms. Carter and Rodriguez retaliated against him for his filing a grievance against Rodriguez. Yes, there were three. I'm sorry, because he wrote in pro se and sometimes it's difficult to find out. It is. Pardon me for taking up your time. Go ahead. There were two grievances that were filed against Rosa Rodriguez. One was before May 20th. The other one was on May 27th. Right after, literally within the same afternoon that the second grievance was filed, Mr. Watteson was taken before the assistant warden Carter. That's where the warden placed Mr. Watteson in administrative segregation. Subsequently, he was forced to attend his parole hearing wearing a prison jumpsuit and shackles. Then Ms. Carter represented to the parole board falsely that he had been placed into administrative segregation because of the use of abusive language, which is the same false charge that was made by Ms. Rodriguez in the disciplinary charge that she submitted. Now, I think we showed in our brief that those allegations satisfy all of the elements of a retaliation claim, and the district court didn't really show that there were any elements that weren't satisfied. It simply dismissed these claims in a conclusory fashion, and the defendants haven't shown that any particular elements weren't satisfied either. Now, they have protested that the description of what happened at the parole hearing is a gross misrepresentation, but, of course, that's a factual issue, and it's not appropriate to resolve or dismiss a claim on pleadings based upon a dispute. Unless the pleadings are so unclear that you can do it as a matter of law. Isn't that so? Well, if they're not plausible or they're not clear, that's correct, Your Honor, but I think we've shown that although the pleadings are a little bit difficult to understand, particularly as written, that they do state sufficient facts to satisfy each element of a retaliation claim. Now, the defendants have also argued that there's nothing unusual about Mr. Waddeson being forced to attend the parole hearing in a prison jumpsuit and shackles, and they point to the prison procedures for transporting prisoners. Now, first of all, that only pertains to one aspect of the retaliation. It doesn't deal with the false disciplinary charge. It doesn't deal with the placing in administrative segregation. It doesn't deal with the lying at the hearing. Are you claiming that the fact that he was in prison garb and with shackles is a violation of the Eighth Amendment? No, we're not arguing an Eighth Amendment violation, Your Honor. We're arguing that this was done in retaliation. And if you think about retaliation, probably the most serious form of retaliation against a prisoner is to interfere with their attempts to regain their liberty. I mean, short of violence. But all the cases that say that prisoners shouldn't be shackled is so that the jury doesn't get the impression that they're already condemned. But there's no jury here. The parole board knew perfectly well that he was an inmate. That's why he was there for parole. But you put individuals in these jumpsuits, as the procedures say, when they're maximum security prisoners or when they're in administrative segregation. Now, Mr. Watteson was placed in administrative segregation for his own protection, for the safety of the institution, not because of any misconduct that he had engaged in. At least that's what the official records say. And so there was a... The parole board wouldn't know that? No, because Ms. Carter misrepresented to the parole board that he was in administrative segregation because he had used abusive language, which is the same false allegation that was made by Rosa Rodriguez. We would submit that those allegations, Your Honor, are sufficient to establish all of the elements of a retaliation claim. Now, there are also three other retaliation claims. I think we deal with them in our brief. And unless the Court has any questions concerning that, I'd like to move on to the Eighth Amendment claim. Now, the Eighth Amendment protects individuals against cruel and unusual punishment. It's designed to protect the interest in human dignity. And it's well settled that it protects prisoners against gratuitous sexual harassment and humiliation. And that's exactly what occurred here. Mr. Watteson was in his cell. He was on the toilet, presumably with his pants down, in a vulnerable position. Officer Laguerre entered the cell, engaged in unwanted sexual contact. He brushed his thigh against Mr. Watteson's thigh and then laughed at him. Well, hold on, counsel. We've held in bank that after incarceration, I'm quoting from Jordan v. Gardner, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Do you wish us, as a three-judge panel, to say that's overruled, sexual harassment equals pain? I think, Your Honor, the cases that we cited in our brief indicated that gratuitous sexual humiliation does constitute an Eighth Amendment violation. Unnecessary and wanton infliction of pain? I think this, Your Honor, it does constitute satisfied crime. Do you have any cases that say that, that say that Jordan v. Gardner extends to sexual harassment? Well, we did cite several cases, Your Honor, and, of course, the defendants did not cite the Jordan case to us. And I would ask, Your Honors, that we have an opportunity to address that case, since we haven't. We did cite the Schwenk case, which is from 2000, and we cited some other cases. And do those have to do with sexual harassment as equal to unnecessary and wanton infliction of pain? Well, if you look at pages 29 through 30, those are the cases that we cite concerning sexual harassment and humiliation. Several of those cases don't involve any touching at all. Now, they are not Ninth Circuit cases, Your Honor, and that's why I would ask you for the opportunity to address the case that you raised. Okay. Your Honor, I see I'm almost done with my time. I'd like to reserve the remainder for rebuttal. We'll give you an extra minute. Thank you. Good morning, Your Honor. May it please the Court, Clark Leslie, Senior Attorney General for the State of Nevada. Good morning. Can you speak up a little louder? Yes, Your Honor. Clark Leslie, Senior Deputy Attorney General for the State of Nevada. This case involves a district court judge who dismissed this matter under 28 U.S.C. section 1915A, finding under that particular provision that there were frivolous allegations made or that there was not a sufficient statement of facts to constitute a cause of action. This was not one of those 1915F three strikes. You're out. No, Your Honor. Thank you. At page two of the order that was issued by Judge Reed. What did Justice Reed say about the state claims? He did not say anything about the state claims. How can we review that? Because, Your Honor, as a matter of law, pendant jurisdiction is left to the discretion of the court, it is a reasonable implication, if not conclusion, that Judge Reed felt that it would be obvious that he was exercising his discretion to not. Even if he doesn't say a word of reason? We would argue that is the case, Your Honor, yes. We would further argue that the law is so plain and clear in this area that criminal statutes, particularly in a 1983 case, cannot be used to implicate any causation or any cause of action that it was unworthy of comment. Pendant jurisdiction is completely discretionary with the court. We have pointed out where these particular criminal statutes that were cited were grossly unrelated and inappropriate to the claims that were before the court. And just to make the point, it's not as though Mr. Watterson does not have recourse. He certainly could file a complaint with the district attorney of Carson City, which has been done. He could also file a complaint which would be brought to the attention of the Inspector General, Pam DelCordo. It's been done on numerous occasions. If I understand you correctly, what you're saying is that Mr. Watterson claimed in his state claims only criminal violations which do not give rise to any tort injuries. That's correct, Your Honor. And we cite the court to several authorities which have held this point, that state claims that raise criminal allegations only in the rarest of circumstances, and this would not be one of them, should not be considered and should not be honored in a civil claim. Does it matter that he dismissed with prejudice as opposed to dismissal without prejudice? No, Your Honor. And the reason for that is the standard, unlike the rest of this appeal, which is de novo, the standard for a decision by a district court to not allow for an amendment is abuse of discretion. And when one goes through the order of Judge Reed, it's rather apparent that the court felt that it was not going to be an abuse of discretion to deny an opportunity to amend because, as you are well aware, Judge Ferris, the standard there is whether or not it would be futile or whether or not an amendment could cure the defects in the complaint. And here, and I would take issue with my honorable opponent, the allegations are a poster child for the Iqbal case. They are formulaic. They are conclusory. They are allegations that are designed to inflame, but they have little or no factual substance. He retaliated. She was not very nice. We move on to the Eighth Amendment claims, which are more serious. Are you familiar with Weems against the United States? No, Your Honor. That's a famous Supreme Court case. I'll give you the site because I think we'll want to look at it. Yes. It's 217 U.S. 349, 1910, a decision of the Supreme Court that says cruel and unusual is an evolving standard, a standard of decency. And I wonder if you're prepared to say that this action by the prison guard interfering with a man on the toilet was decent. I didn't recognize the case name. I certainly recognize that language, Your Honor. I'm asking you, was that a decent act? If it was true, it certainly was not a decent act if it's taken in the context that's given by Mr. Watterson. If it was unintentional, well, for that matter, first of all, How could it be unintentional to interfere with a man on the toilet? The cells are very small, Your Honor, and if my client's guard was going to see something else behind or near the toilet, it would not be uncommon for the guard to brush against an individual. Well, wouldn't that be a matter to decide after hearing whether the guard says it's unintentional? But he can't. By saying it's unintentional, he doesn't negate the serious allegation of infliction of pain, psychological pain. Isn't that right? I would take issue with that, Your Honor. Tell me how you take issue. First of all, the decision in Hernandez and Oltrzewski, which we do cite, state that isolated instances of brief contact may be considered to be sexual in nature. No, I'm talking about psychological pain. The issue of psychological pain could constitute grounds under some circumstances. Well, wouldn't it? If somebody's on the toilet and an approach is alleged, wouldn't you say that was an inflicting psychological pain? No. What would you say it was? It was an incidental contact that had no intention to cause any harm. So now you're assuming the facts. Let's assume, as alleged, that it was intentional. If it was intentional, I don't see where that could cause any psychological harm. It might cause anger. It might cause embarrassment. But I don't believe it. You don't say you see it as a you think it was painless. I do. Do you? Certainly it was not physical. Do you think somebody approaching you on the toilet that way would not inflict any pain on you? It would bother me. What? It would bother me, but it wouldn't. Why would it bother you? Because of my feelings about privacy. You'd feel pain. But there is no privacy in a prison cell. Oh, not on the toilet even. Not even on the toilet, Your Honor. That's a nice picture of a Nevada jail. You know, if you look at Wayne's, you'll see we have evolving standards of decency to enforce. And if your prisoner's a little behind, they'll have to come up to snuff. Our prison is set up like any other in the country where an inmate who is in jail I've never seen a case like this before. You know what the difficulty, Mr. Leslie, and I'm following up on the judge's questioning of you, the difficulty is the allegation. He alleged that it was done deliberately and that the guard exited the cell laughing. Isn't that the allegation? That is the allegation. And how do we resolve that? Because the cases I just mentioned, Hernandez and Olszewski, which were rendered after the Waynes case and obviously recognized the evolving standards of our society, nonetheless also held that isolated instances of sexual conduct did not rise to the level of a constitutional violation. And those cases also held that an isolated instance of harassment does not constitute a constitutional violation. It depends on whether they want it or not. This is actually physical touching. That's correct. The difficulty I have in following up is that this missile was with prejudice. And does that pose a problem so far as you're concerned? Not given the conclusory. Well, if they're factual questions, that's why I said with prejudice. If there is a factual dispute and the court dismisses with prejudice without resolving that factual dispute and the case then comes on appeal and we look at it, don't we have to just look at the record and see if the allegation is at least sufficient to require some response? Well, under Iqbal, of course, the question no longer must be assumed as a fact. And more importantly, under Section 1915A, a great deal of discretion is afforded to the district court judge. Judge Reed has over 30 years of experience and has dealt with over 1,000 cases with inmates. We review cases on the basis of the record, not the reputation of the good judge. Understood. Isn't that right? Yes. In this record, is there a question that's unanswered? There have been records certainly presented to this court that have more factual bases. That's true. But Judge Reed looked at this and determined, number one, there was no basis for any claims, and number two, he didn't feel that there would be any success that could be engendered by the inmate in allowing him to amend further. I see my time is nearly up. I would like to briefly remind you. My time is all over. You're over the time. Oh, I'm over time. Thank you very much. Thank you, Your Honors. We'll give you a minute to rebut. Thank you, Your Honor. Did you hear him? He said he'd give you a minute to rebut. Thank you, Your Honor. Judge Noonan, as you point out, the allegations in this complaint are sufficient to show psychological pain. And this is more than just a transitory touching, an inadvertent touching. This was deliberate, and it was done to humiliate. Justice Ferris, as you pointed out, the guard smiled when he did it, and he laughed as he left. This was a deliberate humiliation. As far as the state law claims, you're correct. This dismissal was with prejudice. That is not consistent with a dismissal for a declined criminal jurisdiction. He could have dismissed with prejudice. It was totally frivolous.  One of the arguments that they've made why this was frivolous is because there's no cause of action. That has never been resolved by the Nevada courts. As we pointed out, one of the statutes that we invoked is inhumanity to prisoners. There is a serious question as to whether that would state a private cause of action under Nevada law, and that's something that should be resolved by the Nevada courts, not by the federal court in a summary proceeding without any briefing. The defendants have also said over and over again that there are conclusory allegations, that we haven't said any specifics, but they have not pointed to any of the very specific facts that we pointed out in our brief. We went through each element of each of the claims that we are continuing to assert on appeal and showed that there were plausible, adequate allegations for those. Your Honors, we would respectfully ask that the court reinstate the claims that we have brought up on our appeal and that they be remanded back for the ordinary proceedings that claims would be subject to. Thank you. Thank you very much, Mr. Bromberg. Thank you for your pro se appearance. There's no? No, no, no. You're the respondent. Oh. The defendant was to your opponent, but I wanted you to pay attention if you wanted so you could take whatever notes you needed to. All right. The case of Watterson v. Carter is deemed submitted, and counsel are thanked for their arguments, which are very helpful to the court.
judges: Farris, Noonan, Bea